CHRISTIANA L. BIGGS (13040)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
E-mail: cbiggs@agutah.gov
*Attorney for Defendant Zachary Todd*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STACY E. KINCH,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ZACHARY TODD,<br><br>　　　　Defendant. | **MOTION TO DISMISS**<br><br>Case No. 4:24-cv-00012<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

MOTION ................................................................................................................................. v

MEMORANDUM OF LAW ................................................................................................... 6

INTRODUCTION ................................................................................................................... 6

FACTUAL BACKGROUND .................................................................................................. 6

MOTION TO DISMISS STANDARD .................................................................................... 8

LEGAL ARGUMENT ........................................................................................................... 10

    1.    Qualified immunity standard. ................................................................................... 10

    2.    In this case, the Court should only examine whether the law was "clearly established under the second prong of the qualified immunity analysis. ........................................... 11

    3.    Ms. Kinch cannot show that Trooper Todd's stop violated her clearly established Fourth Amendment rights under the second prong. ................................................................. 12

        3.1.   No law clearly establishes that Trooper Todd did not have at least "arguable" reasonable suspicion to pull over Ms. Kinch based on the hospital tip. .......... 13

        3.2.   Ms. Kinch's assertion that any reasonable suspicion dissipated over time does not overcome Trooper Todd's qualified immunity. ......................................... 16

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alabama v. White,* 496 U.S. 325 (1990) ............................................................................. 14
*Albright v. Rodriguez,* 51 F.3d 1531 (10th Cir. 1995) ........................................................ 11
*Archuleta v. Wagner,* 523 F.3d 1278 (10th Cir. 2008) ....................................................... 11
*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.,* 159 F.3d 1253 (10th Cir. 1998)
 .................................................................................................................................... 12
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................. 9
*Barton v. Clancy,* 632 F.3d 9 (1st Cir. 2011) ..................................................................... 11
*City and Cnty. of S.F. v. Sheehan,* 575 U.S. 600 (2015) .................................................... 13
*City of Escondido v. Emmons,* 586 U.S. 38 (2019) ..................................................... 13, 15
*Cly v. Farmington Police Department,* No. 1:21-CV-202, 2022 WL 1421840 (D.N.M. May 5, 2022) ........................................................................................................................ 18
*Florida v. J.L.,* 529 U.S. 266 (2000) .................................................................................. 14
*Gomes v. Wood,* 451 F.3d 1122 (10th Cir. 2006) ......................................................... 10, 11
*Gross v. Pirtle,* 245 F.3d 1151 (10th Cir. 2001) ................................................................ 10
*Hall v. Bellmon,* 935 F.2d 1106 (10th Cir. 1991) ................................................................ 9
*Hall v. Witteman,* 584 F.3d 859 (10th Cir. 2009) ................................................................ 9
*Harlow v. Fitzgerald,* 457 U.S. 800) (1982) ...................................................................... 10
*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs,* 962 F.3d 1204 (10th Cir. 2020) ............ 17
*Hunter v. Bryant,* 502 U.S. 224 (1991) .............................................................................. 12
*Leverington v. City of Colo. Springs,* 643 F.3d 719 (10th Cir. 2011) ................................. 8
*Malley v. Briggs,* 475 U.S. 335 (1986) .............................................................................. 11
*Medina v. Cram,* 252 F.3d 1124 (10th Cir. 2001) ............................................................. 10
*Mick v. Brewer,* 76 F.3d 1127 (10th Cir. 1996) ........................................................... 12, 13
*Navarette v. California,* 572 U.S. 393 (2014) .............................................................. 14, 16
*Pearson v. Callahan,* 555 U.S. 223 (2008) ................................................................... 11, 12
*Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008) ..................................................... 12
*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169 (10th Cir. 1979) .. 9
*Stack v. McCotter,* No. 02-4157, 79 F. App'x 383 (10th Cir. Oct. 24, 2003) ...................... 9
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007) ..................................... 9
*United States v. Alvarado,* 430 F.3d 1305 (10th Cir. 2005) .............................................. 14
*United States v. Baird,* No. 2:21-po-00304, 2022 WL 1606618 (D. Utah May 20, 2022) 18
*United States v. Bruce,* 977 F.3d 1112 (11th Cir. 2020) .............................................. 17, 18
*United States v. Gaines,* 857 F. App'x 454 (10th Cir. May 25, 2021) ......................... 14, 16
*United States v Chavez,* 660 F.3d 1215 (10th Cir. 2011) ............................................ 15, 16
*Vondrak v. City of Las Cruces,* 535 F.3d 1198 (10th Cir. 2008) ....................................... 14
*White v. Pauly,* 580 U.S. at 79 ............................................................................................ 13

*Whren v. United States*, 517 U.S. 806 (1996) ............................................................. 13, 14

Statutes

42 U.S.C. § 1983 ................................................................................................ 10, 14, 19

Rules

Fed. R. Civ. P. 10(c) ................................................................................................................ 9
Federal Rules of Civil Procedure 12(b)(6) ................................................................. v, 8

## MOTION

Defendant Trooper Zachary Todd, through counsel, pursuant to Federal Rules of Civil Procedure 12(b)(6), moves the Court to dismiss Plaintiff Stacy Kinch's Complaint.[1] Plaintiff's Complaint should be dismissed on the following grounds:

- Ms. Kinch's claim against Trooper Todd is barred by the doctrine of qualified immunity.  In particular, no law clearly establishes that Trooper Todd violated Ms. Kinch's Fourth Amendment rights at the time of the incident, whether Ms. Kinch's theory is that:
    - The tip from an unnamed hospital worker did not provide reasonable suspicion to initiate a traffic stop of Ms. Kinch, or
    - Trooper Todd's extended time following Ms. Kinch vitiated any reasonable suspicion provided by the tip from the hospital worker.

For these reasons, more fully discussed in the following Memorandum of Law, Trooper Todd respectfully requests the Court grant his motion and dismiss Ms. Kinch's claims, with prejudice.

---

[1] Compl., Dkt. 1

v

## MEMORANDUM OF LAW

### INTRODUCTION

Trooper Todd pulled over Stacy Kinch based upon a tip from the hospital in Cedar City that Ms. Kinch had ingested narcotics and drove from the hospital, after being instructed she was not allowed to drive because it was unsafe. After following Ms. Kinch through Cedar Canyon on SR 14, when it was safe to do so, Trooper Todd initiated the traffic stop. During the stop, Trooper Todd conducted field sobriety tests and based upon those tests, arrested her. Ms. Kinch was criminally charged, but the criminal court determined that Trooper Todd did not have sufficient reasonable suspicion to pull over Ms. Kinch. This § 1983 suit for monetary damages followed.

However, the law in this area is not clearly established and Trooper Todd is shielded by qualified immunity. Specifically, the issue of anonymous tips supporting reasonable suspicion for investigatory stops concerning drunk or erratic driving is not clearly established. Thus, no liability can attach against Trooper Todd.

### FACTUAL BACKGROUND

On December 30, 2018, Ms. Kinch drove herself to the Cedar City Hospital, received an injection of morphine, and hospital staff instructed her not to drive.[2] Despite this instruction, Ms. Kinch departed from the hospital in her vehicle.[3] A hospital tipster called Dispatch to report that a female patient who had been given narcotics, and told

---

[2] *Id.* ¶ 5.
[3] *Id.*

not to drive, departed the hospital in her vehicle, a black Subaru, and was driving south on Main Street.[4] The tipster did not provide a timeline of when the narcotic had been administered, what drug the narcotic was, or when the patient had departed the hospital.[5] Dispatch then relayed the informant's information, and Trooper Todd heard the report.

Trooper Todd subsequently observed a vehicle matching that description with a female driver leaving the Cedar City Post Office onto Main Street and followed it.[6] While following this vehicle, Trooper Todd called dispatch to see if it could provide a description of the driver.[7] In the interim, Trooper Todd continued to follow the vehicle, assisted by an Iron County Sheriff's Deputy in a separate vehicle.[8] This pursuit lasted for five miles.[9] Eventually, dispatch provided a description of the patient that matched the driver Trooper Todd was following.[10] Trooper Todd pulled over the vehicle and administered field sobriety tests; Ms. Kinch failed these tests.[11] As a result, Ms. Kinch was arrested.[12]

---

[4] *Id.*
[5] *Id.* ¶ 6.
[6] *Id.* ¶¶ 8-10.
[7] *Id.* ¶ 16.
[8] *Id.* ¶ 12.
[9] *Id.* ¶ 14.
[10] *Id.* ¶¶ 16-17.
[11] *Id.* ¶ 20.
[12] *Id.*

Trooper Todd called Ms. Kinch's husband who met them at the Cedar City Police Department immediately.[13] At the police department, Trooper Todd performed a blood test upon Ms. Kinch.[14] Trooper Todd cited Ms. Kinch for Driving Under the Influence and released her into her husband's custody.[15]

Ms. Kinch was then charged with Driving Under the Influence of Alcohol and/or Drugs.[16] In her case filed in the Iron County Justice Court, Ms. Kinch's counsel filed a Motion to Suppress all post-stop evidence on the grounds that Trooper Todd had no reasonable suspicion to pull Ms. Kinch over.[17] The motion was granted by the justice court and affirmed on appeal to then-Fifth District Judge, the Honorable Ann Marie McIff Allen.[18] As a result, the criminal case was dismissed.[19]

## MOTION TO DISMISS STANDARD

Trooper Todd moves to dismiss Ms. Kinch's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inferences in a light most favorable to the plaintiff. *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But, on a motion to dismiss, conclusory pleadings "are not entitled to the assumption of truth."

---

[13] *Id.* ¶ 21.
[14] *Id.* ¶ 20.
[15] *Id.* ¶¶ 22-23.
[16] *Id.* ¶ 24.
[17] *Id.* ¶ 27.
[18] *Id.* ¶¶ 33-34. *See* State Court Docket, *State of Utah v. Stacy Eileen Kinch*, Case no. 205500042, Utah Fifth District Court, attached as Exhibit 1.
[19] *Id.* ¶ 36.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the complaint, but may also rely on all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). In the context of a motion to dismiss, this Court may take judicial notice of a state court docket and filings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Stack v. McCotter*, No. 02-4157, 79 F. App'x 383, 391 (10th Cir. Oct. 24, 2003) (ord. & j. not selected for publication) (recognizing that the court can take judicial notice of a state district court docket sheet).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678.

9

**LEGAL ARGUMENT**

Ms. Kinch's Complaint contains one cause of action, seeking damages for an alleged a violation of her Fourth Amendment rights, actionable under 42 U.S.C. § 1983. Ms. Kinch's claims should be dismissed because Trooper Todd is entitled to qualified immunity on the claim. For the purposes of this motion only Trooper Todd does not challenge, and the Court should not address, whether his actions actually violated Ms. Kinch's Fourth Amendment rights. However, because no law clearly established that Trooper Todd's actions violated Ms. Kinch's rights at the time of the stop and arrest, Ms. Kinch cannot overcome the second prong of the qualified immunity analysis, and the Court should dismiss her claim.

1. **Qualified immunity standard.**

Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818) (1982)). When a state official asserts qualified immunity, they create a rebuttable presumption that they are immune from the plaintiff's § 1983 claims. *See Medina v. Cram,* 252 F.3d 1124, 1129 (10th Cir. 2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle,* 245 F.3d 1151, 1155 (10th Cir. 2001). Immunity may be denied "only if, on an objective basis, it is obvious that no reasonably competent [officials] would have

concluded that the actions were constitutional." *Gomes,* 451 F.3d at 1134. But, "'if [officials] of reasonable competence could disagree about the lawfulness of the challenged conduct, then '[qualified] immunity should be recognized.'" *Id.* at 1136 (alteration in original) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

> **2. In this case, the Court should only examine whether the law was "clearly established under the second prong of the qualified immunity analysis.**

Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct…." *Pearson v. Callahan,* 555 U.S. 223, 231 (2008). If the plaintiff fails to meet their "heavy two-part burden" on either part of the qualified immunity inquiry, the court must grant the defendant qualified immunity. *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995).

"Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone." *Barton v. Clancy,* 632 F.3d 9, 22 (1st Cir. 2011). In *Pearson*, the U.S. Supreme Court identified circumstances in which analyzing only the second prong is most appropriate. *Pearson,* 555 U.S. at 236-39. For example, courts should skip to the second prong when skipping preserves the parties' and judicial resources, when a decision is uniquely "factbound" and would fail to make a "meaningful contribution" to

11

the development of constitutional precedent, and when qualified immunity is asserted at the pleading stage. *Id.*

In this case, for the purpose of this motion only, Trooper Todd does not argue that his actions did not violate the fourth Amendment, and this Court should not analyze the constitutional question. Several *Pearson* factors favor that choice: qualified immunity is being raised at the pleadings stage, several unique facts complicate the analysis, and deciding this case now, on the "clearly established" prong, would save judicial and personal resources to ensure that qualified immunity is decided at the "earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam).

### 3. Ms. Kinch cannot show that Trooper Todd's stop violated her clearly established Fourth Amendment rights under the second prong.

The second element of the "qualified immunity" analysis requires courts to examine whether the right allegedly violated was a "clearly established" right. *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008). A "clearly established" right is one that makes it apparent that the defendant's conduct is unlawful "in light of preexisting law." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1260 (10th Cir. 1998).

Ms. Kinch bears the burden to show the defendant's actions violated a constitutional right, and that the allegedly violated right was clearly established at the time of the conduct at issue. *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir. 1996). This burden is often satisfied by a plaintiff "showing that there is a Supreme Court or Tenth

12

Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts." *Id.*

When examining whether a right is clearly established, the United States Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *City and Cnty. of S.F. v. Sheehan,* 575 U.S. 600, 613 (2015) (cleaned up). Rather, the clearly established right must be defined with specificity." *City of Escondido v. Emmons,* 586 U.S. 38, 42 (2019). In other words "[t]he clearly established law must be 'particularized' to the facts of the case." *White,* 580 U.S. at 79. Factual similarity "is especially important in the Fourth Amendment context" to allow "an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Emmons,* 586 U.S. at 42 (cleaned up).

In this case, there is no law clearly establishing that Trooper Todd violated Ms. Kinch's Fourth Amendment rights, because no law clearly establishes that Trooper Todd did not have at least arguable reasonable suspicion to pull over Ms. Kinch based on the tip from the hospital, and no law clearly establishes that Trooper Todd's arguable reasonable suspicion dissipated simply because he followed Ms. Kinch up Cedar Canyon for five miles before pulling her over.

> **3.1. No law clearly establishes that Trooper Todd did not have at least "arguable" reasonable suspicion to pull over Ms. Kinch based on the hospital tip.**

A police officer may stop an automobile when the officer has probable cause or a reasonable suspicion to believe that a driver has violated a traffic law. *Whren v. United*

13

*States*, 517 U.S. 806, 10 (1996); *United States v. Alvarado,* 430 F.3d 1305, 1308 (10th Cir. 2005) (Officers "must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping an automobile."). "Reasonable suspicion" means "a particularized and objective basis for suspecting the person stopped of criminal activity." *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1206 (10th Cir. 2008) (citations and quotations omitted). Though it must be more than a "hunch," "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 1027 (citations and quotations omitted.)

Because Officer Todd has asserted the defense of qualified immunity in a § 1983 lawsuit, he need only have had "arguable reasonable suspicion" to effect the stop. "Arguable reasonable suspicion" exists when "a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff." *Id.* (cleaned up.)

Phoned-in tips from citizens—even anonymous tips—can provide reasonable suspicion for an officer to effect a traffic stop. *Alabama v. White,* 496 U.S. 325, 331 (1990); *Navarette v. California,* 572 U.S. 393, 404 (2014). But not always. *Florida v. J.L.,* 529 U.S. 266, 272 (2000). The Court "has struck a delicate balance on when an anonymous tip can provide a reasonable suspicion for an investigatory stop." *United States v. Gaines,* 857 F. App'x 454, 458 (10th Cir. May 25, 2021) (unpublished). To properly apply that "delicate balance" the Tenth Circuit has set out a multi-factor balancing test to determine whether a tip provides reasonable suspicion:

14

> Although no single factor is dispositive, relevant factors include: 1) whether the informant lacked 'true anonymity' (i.e. whether the police knew some details about the informant or had means to discover them); 2) whether the informant reported contemporaneous, firsthand knowledge; 3) whether the informant provided detailed information about the events observed; 4) the informant's stated motivation for reporting the information; and 5) whether the police were able to corroborate information provided by the informant.

United States v Chavez, 660 F.3d 1215 (10th Cir. 2011). "[w]hether a tip provides reasonable suspicion to make a traffic stop is case-specific," and no single factor is dispositive. Id. at 1222.

In this case, the tipster was not "truly anonymous," as dispatch had confirmed that the tipster was at the hospital and had means to discover even more details. Based on the sequence of events, Trooper Todd had reason to believe that the report was contemporaneous. Though the description of the narcotic was vague, Trooper Todd received updated information identifying the target of the investigation and knew that the suspect had been instructed not to drive. Trooper Todd had no reason to believe that the motivation for reporting the information was anything but altruistic. However, Trooper Todd was unable to corroborate information provided by the informant (other than the simple description of Ms. Kinch and her vehicle).

In this "case specific" analysis, Chavez, 660 F.3d at 1222, where providing factually similar precedent "is especially important," Emmons, 586 U.S. at 42, there are simply no cases putting Trooper Todd on notice that his action violated the Fourth Amendment. In fact, relevant case law suggests the opposite.

For example, in *Navarette*, the U.S. Supreme Court concluded that an anonymous tip with sufficiently particularized and objective information could create reasonable suspicion without independent police corroboration of criminal activity. *Navarette*, 572 U.S. at 397. *Chavez* holds that, when an anonymous tipster reports their specific employment information, the tipster's tip is not "truly anonymous" and lends support to the veracity of the information. *Chavez*, 660 F.3d at 1222. And in *United States v. Gaines*, No. 19-3177, 857 F. App'x 454, 458, (10th Cir. May 25, 2021) (unpublished), the Tenth Circuit found that a tipster who used the 911 system, contemporaneously reported first-hand observations, made the tip from a known location, withheld no information, and appeared to have a "benign" motive, along with the officer's general knowledge about the likelihood of crime in a particular area, supported reasonable suspicion. *Gaines*, 857 F. App'x at 459-60.

Though none of these cases are on all fours with the situation here, they demonstrate that Trooper Todd had at least "arguable reasonable suspicion" to make the stop. Because he had at least arguable reasonable suspicion, and no authority clearly establishes otherwise, he is entitled to qualified immunity and dismissal of Ms. Kinch's complaint.

### 3.2. Ms. Kinch's assertion that any reasonable suspicion dissipated over time does not overcome Trooper Todd's qualified immunity.

Additionally, Ms. Kinch appears to argue in her complaint that if Trooper Todd did have reasonable suspicion based on the hospital report, it "dissipated by virtue of Todd's

close scrutiny of Stacy's driving in the city and up the canyon"[20] and the lack of a "significant driving pattern" showing impairment.[21] This argument does not overcome Trooper Todd's qualified immunity.

"Information learned after developing probable cause but before an arrest can dissipate probable cause." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1221 (10th Cir. 2020). But "not all new evidence does so." *Id.* "[H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car. Instead, arresting officers must release a suspect only if the police discover that the suspicion … which forms the basis for the privilege to arrest is unfounded." *Id.* (cleaned up).

Counsel for Trooper Todd could find no cases concluding that an officer's observation, for five miles, of a person suspected of taking a narcotic to a sufficient quantity that someone from a hospital called to report them for driving, dissipated reasonable suspicion from the original report. Again, case law would suggest the opposite.

For example, in *United States v. Bruce*, 977 F.3d 1112 (11th Cir. 2020), the court held that reasonable suspicion for assault did not dissipate simply because, by the time

---

[20] Compl., Dkt. 1
[21] *Id.* ¶ 15.

17

the officer arrived at the scene, the assailants were sitting in a car peaceably. *Id.* at 1118. In *Cly v. Farmington Police Department,* No. 1:21-CV-202, 2022 WL 1421840 (D.N.M. May 5, 2022) (unpublished) the court concluded that, even though an officer did not personally observe signs of intoxication when he pulled over a driver based on a reliable tip, the officer still had reasonable suspicion to engage in field sobriety tests. *Id.* at * 5–6. The court in *Cly* also alternatively concluded that, if reasonable suspicion had dissipated, the officer could not be liable for a constitutional violation because no law clearly established the violation. *Id.* at *6. And in *United States v. Baird,* No. 2:21-po-00304, 2022 WL 1606618 (D. Utah May 20, 2022) (unpublished) a judge of this Court concluded that a lack of corroborating evidence obtained in an officer's "initial observation period" of two minutes did not dissipate reasonable suspicion provided by an unidentified caller that the suspect was intoxicated. *Id.* at * 3. The Court noted that there was "no authority" to support the argument that the "initial observation period" could stand alone and independently dissipate probable cause.

     Again, these cases may not be on all fours with Trooper Todd's stop of Ms. Kinch, but they demonstrate that, at a minimum, Trooper Todd's arguable reasonable suspicion did not dissipate simply because he followed Ms. Kinch up Cedar Canyon without noticing signs of impairment. And counsel for Trooper Todd has not located any binding, Supreme Court or Tenth Circuit authority to suggest the contrary.

## CONCLUSION

For the reasons stated, Trooper Todd had at least arguable probable cause to stop Ms. Kinch based on the report he and dispatch received from a citizen at the Cedar City Hospital that Ms. Kinch was operating a motor vehicle while intoxicated on narcotics. The fact that Trooper Todd observed Ms. Kinch for five miles while she traversed up Cedar Canyon does not change that conclusion. Accordingly, Trooper Todd is entitled to qualified immunity on Ms. Kinch's § 1983 claim under the second prong of the qualified immunity analysis, and the case should be dismissed, with prejudice.

RESPECTFULLY SUBMITTED THIS 30th day of May, 2024.

OFFICE OF THE UTAH ATTORNEY GENERAL

*/s/Christiana L. Biggs*
CHRISTIANA L. BIGGS
Assistant Utah Attorney General
*Attorney for Defendant*

**CERTIFICATE OF MAILING**

I certify that on this 30th day of May, 2024, I electronically filed the foregoing, **MOTION TO DISMISS**, using the Court's electronic filing system. I also certify that a true and correct copy of the foregoing was placed in outgoing, United States mail, postage prepaid, to the following:

Stacy Kinch
1360 Heavenly Drive
HC 82 Box 1916
Duck Creek, Utah 84762
stacy.flatt@yahoo.com

*/s/Dustie Ross*